FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

AUG 12 2025

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIMINAL NO. 25-3104 MLG |
| ) | |
| vs. ) | Count 1: 8 U.S.C. § 1324(a)(1)(A)(v)(I): |
| ) | Conspiracy to Harbor Illegal Aliens; |
| NAN ZHANG, a.k.a. "La China," and ) | |
| SANJAY KHURANA, ) | Count 2: 18 U.S.C. § 1956(h): |
| ) | Conspiracy to Commit Money |
| Defendants. ) | Laundering; |
| ) | |
| ) | Count 3: 18 U.S.C. § 1956(a)(3): |
| ) | Money Laundering; 18 U.S.C. § 2: |
| ) | Aiding and Abetting. |

INDICTMENT

The Grand Jury charges:

Count 1

Beginning on a date unknown, but no later than on or about March 7, 2023, and continuing to on or about July 22, 2025, in Bernalillo County, in the District of New Mexico, and elsewhere, the defendants, **NAN ZHANG** and **SANJAY KHURANA**, unlawfully, knowingly, and intentionally combined, conspired, confederated, agreed, and acted interdependently with each other and with other persons whose names are known and unknown to the Grand Jury to commit an offense defined in 8 U.S.C. § 1324(a)(1)(A)(iii), specifically, harboring illegal aliens.

Manner and Means

The manner and means by which the defendants, **NAN ZHANG** and **SANJAY KHURANA**, sought to accomplish the objectives of the conspiracy included, among other things, the following:

1. It was part of the conspiracy that **SANJAY KHURANA** owned, both directly and indirectly, numerous residential properties in the Albuquerque, New Mexico, area, which, during the relevant timeframe, were managed by **NAN ZHANG**. The properties included:

    i. 919-923 Alvarado Dr. SE, Albuquerque, New Mexico 87108, an eight-unit apartment complex;

    ii. 529-535 Utah St. NE, Albuquerque, New Mexico 87108, a six-unit apartment complex;

    iii. 4505 Villa Loma Ln. NE, Albuquerque, New Mexico 87111, a three-story townhouse; and

    iv. 1033-1037 Alvarado Dr. SE, Albuquerque, New Mexico 87108, a six-unit apartment complex.

2. It was further part of the conspiracy that, between on or about March 7, 2023, and on or about July 22, 2025, **NAN ZHANG** and **SANJAY KHURANA** arranged rental agreements with individuals they knew or believed were involved in the transportation and harboring of illegal aliens, specifically Co-Conspirators 1-6 and Undercover Agent 1 ("UCA 1").

3. Co-Conspirator 1 is the head of a human smuggling operation that smuggles illegal aliens into the United States for a fee. **NAN ZHANG** and **SANJAY KHURANA** developed a long-term business relationship with Co-Conspirator 1, which consisted of renting him and his associates properties to use as stash houses for illegal aliens who had been unlawfully smuggled into the United States.

4. Co-Conspirator 2 is also the head of a human smuggling operation that smuggles illegal aliens into the United States for a fee. **NAN ZHANG** and **SANJAY KHURANA** developed a long-term business relationship with Co-Conspirator 2, which has consisted of renting him at least one property to use as a stash house.

5. Co-Conspirator 3 is a human smuggler that managed stash houses on behalf of Co-Conspirator 1. **NAN ZHANG** and **SANJAY KHURANA** developed a long-term business relationship with Co-Conspirator 3, which consisted of renting him at least one apartment unit to use as a stash house.

6. Co-Conspirator 4 is a human smuggler that managed human stash houses on behalf of Co-Conspirator 1. **NAN ZHANG** and **SANJAY KHURANA** developed a long-term business relationship with Co-Conspirator 4, which consisted of renting him at least one apartment unit to use as a stash house.

7. Co-Conspirator 5 is a human smuggler that managed a stash house. **NAN ZHANG** and **SANJAY KHURANA** had a business relationship with Co-Conspirator 5, which consisted of renting him at least one apartment unit to use as a stash house.

8. Co-Conspirator 6 is a human smuggler that managed human stash houses on behalf of Co-Conspirator 1. **NAN ZHANG** and **SANJAY KHURANA** developed a long-term business relationship with Co-Conspirator 6, which consisted of renting him at least one apartment unit to use as a stash house.

9. It was further part of the conspiracy that **NAN ZHANG** and **SANJAY KHURANA** charged a higher rate for rental properties used for the "business" of transportation and harboring of illegal aliens than they did for rental properties used for lawful purposes.

10. It was further part of the conspiracy that **NAN ZHANG** maintained relationships with Co-Conspirators by providing discounts on rent if "business" was slow, alerting Co-Conspirators about law-enforcement activities, and maintaining rental agreements with Co-Conspirators after law enforcement events that revealed their "business."

11. It was further part of the conspiracy that, on or about March 7, 2023, **NAN ZHANG** and **SANJAY KHURANA** participated in a phone call with an associate of Co-Conspirator 1, during which **SANJAY KHURANA** made statements about the arrangement with Co-Conspirator 1.

12. It was further part of the conspiracy that, between on or about May 1, 2023, and on or about September 1, 2024, **SANJAY KHURANA** and Co-Conspirators 3 and 4 executed lease agreements to rent several apartment units at 529-535 Utah St. NE, for $2,000 per month, to facilitate the transportation and harboring of illegal aliens on behalf of Co-Conspirator 1.

13. It was further part of the conspiracy that, on or about October 29, 2023, **NAN ZHANG** participated in a phone call with Co-Conspirator 6 about payment for multiple apartment units at 529-535 Utah St. NE, during which **NAN ZHANG** discussed the difference in rent prices when apartments are used for the "business" and the arrangement she had with Co-Conspirator 1.

14. It was further part of the conspiracy that, on or about March 4, 2024, **NAN ZHANG** agreed to discount rent for Co-Conspirator 6 because "business" was slow.

15. It was further part of the conspiracy that, before on or about April 22, 2024, **NAN ZHANG** knowingly rented at least one apartment unit at 919-923 Alvarado Dr. SE to Co-Conspirator 1 or his associates for the purpose of harboring illegal aliens.

16. Between May 2024 and May 2025, **NAN ZHANG** and **SANJAY KHURANA** rented an apartment unit at 919-923 Alvarado Dr. SE to UCA 1, believing the apartment would be used to harbor illegal aliens.

17. It was further part of the conspiracy that, beginning on a date unknown, but no later than June 2024, and continuing to on or about February 11, 2025, Co-Conspirator 2 rented 4505 Villa Loma Ln. NE from **NAN ZHANG** and **SANJAY KHURANA,** to facilitate the transportation and harboring of illegal aliens.

18. On or about September 2, 2024, Co-Conspirator 2 was shot in the chest at 4505 Villa Loma Ln NE, which caused a law enforcement response and revealed 12 illegal aliens harbored at that address.

19. It was further part of the conspiracy that, on or about September 3, 2024, **NAN ZHANG** communicated with an associate of Co-Conspirator 2 to provide information from law enforcement reports and arrange for continued rent payments and payment for damage to the property.

20. It was further part of the conspiracy that, when Co-Conspirator 2's profit slowed from transporting and harboring illegal aliens, in January and February 2025, **NAN ZHANG** began making arrangements to move Co-Conspirator 2 from 4505 Villa Loma Ln. NE to 1033-1037 Alvarado Dr. SE.

21. It was further part of the conspiracy that, beginning on a date unknown, but no later than January 2025, and continuing to March 2025, Co-Conspirator 5 rented an

   apartment unit at 1033-1037 Alvarado Dr. SE from **NAN ZHANG** and **SANJAY KHURANA,** to facilitate the transportation and harboring of illegal aliens.

22. It was further part of the conspiracy that, on or about March 7, 2025, several illegal aliens were seen by law enforcement leaving 1033 Alvarado Dr. SE, Apartment B. Following the apprehension of several illegal aliens and a search of the property, **NAN ZHANG** contacted associates of Co-Conspirator 5 to continue their rental arrangement.

23. On or about March 18, 2025, eight illegal aliens were located by law enforcement inside 529 Utah St. NE, Apartments B and C, following a reported kidnapping of an illegal alien. At the time, these apartments were managed by Co-Conspirators 3 and 4, on behalf of Co-Conspirator 1.

24. It was further part of the conspiracy that, following the March 18, 2025, search, **NAN ZHANG** and **SANJAY KHURANA** continued to rent apartments to Co-Conspirators 3 and 4, on behalf of Co-Conspirator 1, but at a different location to avoid the attention of law enforcement at 529 Utah St. NE.

In violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I).

Count 2

From on or about November 5, 2024, and continuing to on or about July 22, 2025, in Bernalillo County, in the District of New Mexico, and elsewhere, the defendants, **NAN ZHANG** and **SANJAY KHURANA**, unlawfully, knowingly, and intentionally combined, conspired, confederated, agreed, and acted interdependently with each other and with other persons whose names are known and unknown to the Grand Jury to commit an offense defined in 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i), and (a)(1)(B)(ii), specifically, money laundering.

Manner and Means

The manner and means by which the defendants, **NAN ZHANG** and **SANJAY KHURANA**, sought to accomplish the objectives of the conspiracy included, among other things, the following:

1. It was part of the conspiracy that **SANJAY KHURANA** owned, both directly and indirectly, numerous residential properties in the Albuquerque, New Mexico, area, which, during the relevant timeframe, were managed by **NAN ZHANG**. The properties included:

    i. 4505 Villa Loma Ln. NE, Albuquerque, New Mexico 87111, a three-story townhouse; and

    ii. 1512 Spence Ave. SE Albuquerque, New Mexico 87106.

2. It was further part of the conspiracy that, between May 2024 and July 2025, **NAN ZHANG** and **SANJAY KHURANA** repeatedly met with UCA 1 and discussed what they believed to be UCA 1's human smuggling business.

3. It was further part of the conspiracy that **NAN ZHANG** and **SANJAY KHURANA** offered to sell UCA 1 the property at 4505 Villa Loma Ln. NE to "clean" the cash UCA 1 purportedly had from UCA 1's human smuggling business.

4. It was further part of the conspiracy that **SANJAY KHURANA** offered to "act as the bank" for UCA 1 to avoid reporting a large cash down-payment.

5. It was further part of the conspiracy that **SANJAY KHURANA** offered to put the property in the name of a third party, so the property would be more difficult to associate with UCA-1.

6. It was further part of the conspiracy that, when 4505 Villa Loma Ln. NE was rented to unknown individuals, **NAN ZHANG** and **SANJAY KHURANA** offered to sell UCA 1 the property at 1512 Spence Ave. SE instead.

7. It was further part of the conspiracy that, on or about July 1, 2025, **NAN ZHANG** and **SANJAY KHURANA** met with UCA 1 at 1512 Spence Ave. SE to show UCA 1 the property. **NAN ZHANG** and **SANJAY KHURANA** both separately highlighted features of the property, such as a private back gate and a diverse neighborhood, to detail why 1512 Spence Ave. SE was good for UCA 1's "business."

8. It was further part of the conspiracy that, on or about July 1, 2025, **SANJAY KHURANA** offered to sell 1512 Spence Ave. SE to UCA 1 via a real estate contract for a total price of $450,000. Of that total price, $75,000 would be paid in cash to **SANJAY KHURANA** and would not be included in the contract amount of $375,000 and would not be reflected as a down payment. **SANJAY KHURANA** further agreed to directly receive any additional large cash payments from UCA 1.

9. It was further part of the conspiracy that, on or about July 8, 2025, Undercover Agent 2 paid **NAN ZHANG** a $5,000 cash deposit to lock in the plan to purchase 1512 Spence Ave. SE for UCA 1.

10. It was further part of the conspiracy that, between on or about July 8, 2025, and on or about July 22, 2025, **SANJAY KHURANA** employed the services of a title company to facilitate the transfer of real property and obtained at least one cashier's check for the transfer fees.

11. It was further part of the conspiracy that, on or about July 22, 2025, UCA 1, Undercover Agent 3, **NAN ZHANG**, and **SANJAY KHURANA** were present for the execution of the sale documentation for 1512 Spence Ave. SE, following which UCA 1 paid **SANJAY KHURANA** $75,000 in cash.

In violation of 18 U.S.C. § 1956(h).

## Count 3

On or about July 22, 2025, in Bernalillo County, in the District of New Mexico, the defendants, **NAN ZHANG** and **SANJAY KHURANA**, with the intent to promote the carrying on of specified unlawful activity, and to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, and to avoid a transaction reporting requirement under State and Federal law, did knowingly conduct a financial transaction affecting interstate and foreign commerce involving property that was represented to be the proceeds of specified unlawful activity and property that was used to conduct and facilitate specified unlawful activity.

In violation of 18 U.S.C. §§ 1956(a)(3) and 2.

## FORFEITURE ALLEGATION 1

Count 1 of this Indictment is hereby re-alleged and incorporated as part of this section for the purpose of alleging forfeiture to the United States pursuant to 8 U.S.C. § 1324(a) and 18 U.S.C. § 982(a)(6)(A).

Upon conviction of any offense in violation of 8 U.S.C. § 1324, the defendants, **NAN ZHANG** and **SANJAY KHURANA**, shall forfeit to the United States, pursuant to 8 U.S.C. § 1324(a) and 18 U.S.C. § 982(a)(6)(A), any property, real or personal, that constitutes or is derives from or is traceable to the proceeds obtained directly or indirectly from the commission

of such offense or that is used to facilitate, or is intended to be used to facilitate, the commission of such offense. The property to be forfeited includes, but is not limited to the following:

1. MONEY JUDGMENT

A sum of money, representing property that constitutes or is derives from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of conviction or that is used to facilitate, or is intended to be used to facilitate, the commission of such offense.

2. REAL PROPERTY

   a. 529-535 Utah St. NE, Albuquerque, New Mexico 87108, further identified as:

      i. Lots numbered Thirty-one (31) and Thirty-two (32) in Block numbered Thirty-six (36) of Mesa Verde Addition, to the city of Albuquerque, New Mexico, as the same is shown and designated on the Plat of said Addition filed in the Office of the County Clerk of Bernalillo County, New Mexico on November 17, 1939 in Plat Book C, Folio 38. and Lots numbered Thirty-three (33) and Thirty-four (34) in Block numbered Thirty-six (36) of Mesa Verde Addition, to the City of Albuquerque, New Mexico, as the same is shown and designated on the Plat of said Addition filed in the Office of the County Clerk of Bernalillo County, New Mexico on November 17, 1939 in Plat Book C, Folio 38;

      ii. Tax Id number 1-019-057-408378-1-04-21;

   b. 1033-1037 Alvarado Dr. SE, Albuquerque, New Mexico 87108, further identified as:

      i. Lots numbered 11 (Eleven) and Twelve (12) in Block numbered Twelve (12) of Virginia Place, an Addition to the City of Albuquerque, New

Mexico as the same is shown and designated on the Plat of said Subdivision of Block 12, filed in the Office of the County Clerk of Bernalillo County, New Mexico on August 3, 1953, in Map Book D1, folio 97;

    ii. Tax ID numbers 1-018-056-121148-3-16-03 and 1-018-056-121142-3-16-02;

c. 4505 Villa Loma Ln. NE, Albuquerque, New Mexico 87111, further identified as:

    i. Lot numbered Thirty-One (31), of Villa Loma Estates, within Section 34, Township 11 North, Range 4 East, N.M.P.M., City of Albuquerque, Bernalillo County, New Mexico, as the same is shown and designated on said Plat thereof, filed in the Office of the County Clerk of Bernalillo County, New Mexico on October 1, 2007, in Plat Book 2007C, Page 280;

    ii. Tax ID number 1-022-061-469007-4-17-37; and

d. 919-923 Alvarado Dr. SE, Albuquerque, New Mexico 87108, further identified as:

    i. Lots numbered Twenty-three (23) and Twenty-four (24) in Block numbered Four (4) of Melendres Subdivision of Block Four (4) of Virginia Place, an Addition to the City of Albuquerque, New Mexico, as the same is shown and designated on the Plat of said Addition, filed in the Office of the County Clerk of Bernalillo County, New Mexico on February 27, 1958 in Volume B3, folio 62;

    ii. Tax ID numbers 1-018-056-121237-3-23-07 and 1-018-056-121231-3-23-06.

If any of the property described above, as a result of any act or omission of the Defendants:

a. cannot be located upon exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C.§ 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

## FORFEITURE ALLEGATION 2

Counts 2 and 3 of this Indictment are re-alleged and incorporated as part of this section for the purpose of alleging forfeiture to the United States pursuant to 18 U.S.C. § 982(a)(1).

Upon conviction of any offense in violation of 18 U.S.C. § 1956, the defendants, **NAN ZHANG** and **SANJAY KHURANA**, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to the following:

1. MONEY JUDGMENT

A sum of money, representing property involved in the offenses set forth in the Counts of conviction and any property traceable to such property.

2. REAL PROPERTY

   a. 4505 Villa Loma Ln. NE, Albuquerque, New Mexico 87111, further identified as:

      i. Lot numbered Thirty-One (31), of Villa Loma Estates, within Section 34, Township 11 North, Range 4 East, N.M.P.M., City of Albuquerque, Bernalillo County, New Mexico, as the same is shown and designated on said Plat thereof, filed in the Office of the County Clerk of Bernalillo County, New Mexico on October 1, 2007, in Plat Book 2007C, Page 280;

      ii. Tax ID number 1-022-061-469007-4-17-37; and

  b. 1512 Spence Ave. SE Albuquerque, New Mexico 87106, further identified as:

      i. Lot numbered Seventeen (17) in Block numbered Five (5) of Unit 1, of the Kirtland Addition, to the City of Albuquerque, New Mexico, as the same is shown and designated on the map of said Addition, filed in the Office of the County Clerk of Bernalillo County, New Mexico, on February 16, 1951, in Plat Book C1, Page 144;

      ii. 1-015-055-215427-2-07-27.

If any of the property described above, as a result of any act or omission of the Defendants:

  a. cannot be located upon exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C.§ 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

A TRUE BILL:

_____/s/_____
FOREPERSON OF THE GRAND JURY

Assistant United States Attorney